**In the Matter of Michael and Amber HURT, Complainants,**

v.

**The DIME SAVINGS BANK, Respondent.**

**No. CV 93–2895.**

United States District Court,
E.D. New York.

Oct. 7, 1993.

Stanley Scidenfeld, Director U.S. Dept. of Housing & Urban Development, Office of Fair Housing & Equal Opportunity, Region II, New York City, for Complainants.

Douglas E. Barzelay, Gen. Counsel by Sharon Tilove–Navatta, Uniondale, NY, for respondent.

Zachary Carter, U.S. Atty. by Christopher G. Lehmann, Brooklyn, NY, for U.S.

MEMORANDUM AND ORDER

WEXLER, District Judge.

Michael and Amber Hurt ("Plaintiffs"), brought this action against The Dime Savings Bank ("The Dime"), alleging racial discrimination in its 720(c) home refinance program. Michael Hurt is a self-employed owner of a small, black-owned business.

Pursuant to a complaint received from the Hurts, the United States Department of Housing and Urban Development ("HUD"), opened an investigation in this matter. On May 13, 1993, HUD issued an administrative subpoena duces tecum, pursuant to 42 U.S.C. § 3611, requiring The Dime to produce for inspection its files regarding all similar loan applicants in order to compare the processing and handling of these applications by the bank. The Dime located the files of fifty-five 720(c) applicants, but agreed to produce only nine of these files, contending that the remaining forty-six are not responsive to HUD's request because the applicants and co-applicants were not self-employed. The Dime further contended that the cost of retrieving the remaining files would be "oppressive" and an "unreasonable burden."

On August 17, 1993, in response to a motion by The Dime to quash or modify HUD's subpoena, Magistrate Judge David F. Jordan issued an Order requiring the Dime to produce the nine admittedly relevant 720(c) mortgage loan files submitted by self-employed applicants or co-applicants, and also to produce the remaining forty-six loan files provided that HUD agrees to pay the reasonable expense to be incurred by The Dime in assembling such files. Now before the Court is HUD's appeal as to that portion of the Order which conditions the production of the forty-six loan files on payment of costs by HUD. For the reasons stated below, HUD's appeal is granted.

## DISCUSSION

■ Pursuant to Federal Rule of Civil Procedure 72(a), Magistrate Jordan's Order may be modified only upon a showing that it is "clearly erroneous or contrary to law." A ruling is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum, Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

■ In general, the cost to businesses of complying with governmental subpoenas are normal costs of doing business which should be borne by the company. *FTC v. Rockefel-*

*ler,* 591 F.2d 182, 191 (2d Cir.1979). Although a district court may, in its discretion, order that a party seeking discovery pay a portion of the expense incurred in obtaining discoverable materials, "a court will not shift the burden of discovery onto the discovering party where the costliness of the discovery procedure involved is entirely a product of the defendant's recordkeeping system...." *Delozier v. First National Bank of Gatlinburg,* 109 F.R.D. 161, 164 (E.D.Tenn.1986); *accord Baine v. General Motors Corp.,* 141 F.R.D. 328, 332 (M.D.Ala.1991).

In *United States v. Davey,* 543 F.2d 996 (2d Cir.1976), the Second Circuit held that the lower court had abused its discretion in ordering the IRS to pay for the cost of making duplicate copies of subpoenaed records. Because the records were already in existence, the cost of producing them was minimal in relation to the company's size, and regular cooperation with federal government agencies was a part of the company's cost of doing business, the Second Circuit concluded that it was clearly erroneous to find that the duplication costs could be passed on to the government as a precedent to obtaining subpoena compliance. *Id.* at 1001; *see also F.T.C. v. Rockefeller,* 591 F.2d 182, 191 (2d Cir.1979) (generally, the government will not be required to pay the costs of compliance with subpoenas where the documents sought are incident to a respondent's business). Because the factors considered by the Second Circuit in *Davey* are also present in the instant case, HUD argues that Magistrate Jordan was clearly erroneous in shifting the cost of producing the forty-six files from The Dime to HUD.

■ The Dime attempts to distinguish *Davey* and *Rockefeller* on the ground that they are premised on the assumption that the documents in question are relevant. Here, The Dime insists, only the nine files it has agreed to produce are relevant, and therefore Magistrate Jordan was correct in requiring HUD to pay the cost of producing the remaining files. This Court, however, finds that the degree of relevancy need not be as strong as The Dime suggests for a company to produce for inspection, at its own expense,

records that are incident to its doing business. *Cf. Davey*, 543 F.2d at 1000 ("Once the IRS has made a minimal showing of relevancy, . . . the burden shifts to the taxpayer to show why the summons might represent 'an abuse of the court's process' which should not be enforced."). Under the facts of the instant case, this Court finds that the forty-six loan files at issue are sufficiently relevant to HUD's investigation so that it would be improper to shift the cost of production from the bank that created the records and the recordkeeping system to the governmental agency that is in the process of investigating a claim of racial discrimination.[1]

## CONCLUSION

Accordingly, for the aforementioned reasons, HUD's appeal of Magistrate Jordan's Order of August 17, 1993 is granted.

SO ORDERED.

---

1. If, at a later point in this litigation, The Dime can show that the burden of production was clearly and *necessarily* excessive in relation to the relevance of the forty-six files at issue, it can then request that the Court reconsider shifting the cost of production. *See Flynn v. Goldman, Sachs & Co.*, No. 91–CV–0035, 1991 WL 238186 at *2, 1991 U.S.Dist. LEXIS 15785 at *5 (S.D.N.Y. November 1, 1991).